# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACKMAN FINANCIAL CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 08 C 5784 |
| v. | ) |
| | ) Honorable Charles R. Norgle |
| HUMANA INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court are the parties' cross-motions for summary judgment. The primary issue for this Court to decide is whether Defendant Humana Insurance Company ("Humana"), the administrator of a qualified ERISA plan, acted arbitrarily and capriciously when, in its discretion, it paid insurance proceeds to parties other than Plaintiff Jackman Financial Corporation ("Jackman"), a purported assignee of the policy proceeds. For the following reasons, the Court finds that it did not, and therefore Humana's motion for summary judgment is granted, while Jackman's motion for summary judgment is denied.

## I. BACKGROUND

### A. FACTS

As required, the Court takes these undisputed facts from the record available to Humana at the time it made the benefits decision that Jackman is challenging. Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 462 (7th Cir. 2001) (explaining that the court's review is limited to the record available to the plan administrator); Donato v. Metro. Life Ins. Co., 19 F.3d 375, 380 (7th Cir. 1994); Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1450-51 (11th Cir.

1997) (holding that the court shall defer to the plan administrator's interpretation of the plan's terms and its factual findings on that record).

Jackman is a finance company that advances funds to pay for funeral expenses. In return, the company accepts assignments of proceeds from the deceased's life insurance policy, if indeed that's an option. In this case it was. Kunta Torrence ("Kunta") participated in an employee welfare benefits plan (the "Plan") that his employer, Freirich Foods, Inc., established and that Humana administered. Under the Plan's terms, in the event Kunta died, the Plan provided that life insurance proceeds in the amount of $15,000.00 would be paid to the named beneficiary, which was Kunta's brother, Adair. The Plan also provided that in the event Adair was not alive upon Kunta's death, Humana could pay, in its discretion, any of the following individuals as they relate to Kunta: his spouse, his children, his parents, his brothers and sisters, or his estate.

On April 1, 2007 Kunta and Adair died in a motor vehicle accident. To assist Kunta's family in financing his funeral and burial costs, the funeral home contacted Jackman. On April 11, 2007 Jackman contacted Humana to verify Kunta's life insurance policy and to inform Humana that it planned to accept an assignment of Kunta's policy proceeds in return for financing Kunta's funeral. At the time, Kunta's mother, Nancy Kelly ("Kelly"), was seeking to become the executor of Kunta's estate.

On April 11, 2007 Kelly executed an assignment form that assigned $10,664.93 of Kunta's policy proceeds to Jackman in exchange for financing the funeral. Two days later, on April 13, 2007 Kelly was appointed executor of Kunta's estate. On April 23, 2007 Jackman paid $10,185.01 to the funeral home. The next day, on April 24, 2007 Jackman sent to Humana a request for payment of proceeds, attaching in support the assignment that Kelly executed.

Months later, on August 9, 2007 Kelly executed a written affidavit, instructing Humana to pay the policy proceeds to Kunta's children. Then, on or around December 4, 2007 the General Court of Justice, Superior Court Division for the State of North Carolina issued to Humana an order titled, "Authorization for Payment of Money," with respect to Kunta's estate. The order authorized Humana to deliver all funds to the Clerk of the Superior Court in favor of one of Kunta's surviving children. On December 28, 2007 Humana issued a letter to Kelly, stating that it had completed a review of the life and accidental death claim and that it had issued checks in the amount of $16,053.29 made payable to the Clerk of the Superior Court for the estates of Kunta's children.

## B. PROCEDURAL HISTORY

Jackman initiated this case in the Circuit Court of Cook County, Illinois on September 12, 2008, seeking to recover the life insurance benefits that Humana paid to Kunta's children as an assignee of Kunta's mother, a purported beneficiary. Humana removed the case to this Court on October 9, 2008, as Jackman's claims either arose under or were fully preempted and displaced by ERISA, 29 U.S.C. § 1132(a)(1)(B). Jackman filed an amended complaint on December 5, 2008 in which it deleted its state-law claims and added a single claim for denial of benefits pursuant to ERISA. In support, Jackman alleged that Humana's payment of benefits to Kunta's minor children was arbitrary and capricious.

Humana moved to dismiss Jackman's amended complaint, but the Court denied the motion in an Opinion and Order issued on March 12, 2009. In that same Order, the Court directed Jackman to file a more definite statement pursuant to FED. R. CIV. P. 12(e). Jackman filed a second amended complaint on March 26, 2009. Then, on September 30, 2009 Humana filed a motion for summary judgment. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. STANDARD OF DECISION

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). ERISA applies to "any plan, fund or program which was heretofore and hereinafter established or maintained by an employer or employer organization or both." 29 U.S.C. § 1002(1). The parties agree that ERISA governs Freirich Foods, Inc.'s insurance plan. A party may challenge a denial of benefits under an employee benefits plan pursuant to 29 U.S.C. § 1132(a)(1)(B), which is precisely what Jackman has done.

When reviewing a denial of benefits, the court shall apply a de novo standard unless the benefits plan gives the administrator discretionary authority to determine the eligibility for benefits or to construe the plan's terms. Williams v. Aetna Life Ins. Co., 509 F.3d 317, 321 (7th Cir. 2007); Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan, 144 F.3d 1014, 1021 (7th Cir. 1988). Here there is no dispute that Humana had discretionary authority to administer the Plan, thus the Court is required to review the denial of benefits under the arbitrary and capricious standard. Hackett v. Xerox Corp. Long-Term Disability Income, 315 F.3d 771, 773 (7th Cir. 2003).

As the Court has recognized previously, the arbitrary and capricious standard is a highly-deferential standard through which the administrator's decision will only be overturned if it is "downright unreasonable." E.g., Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir. 2005). Indeed a decision may not be set aside as arbitrary and capricious if it is "based on any reasonable interpretation of the plan." Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 658 (7th Cir. 2005). "For example, the court may set aside a

4

decision as arbitrary and capricious if the administrator 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence . . . or is so implausible that it could not be ascribed to difference in view or the product of . . . expertise.'" Losinske v. Wis. Carpenters' Pension Fund, 526 F. Supp. 2d 908, 916 (W.D. Wis. 2007) (quoting Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1985)).

A court applying the arbitrary and capricious standard must accept the administrator's reasonable interpretation of the benefits plan even if it may differ from the claimant's equally reasonable interpretation. Johnson v. Allsteel, Inc., 259 F.3d 885, 890 (7th Cir. 2001). And the reviewing court may not overturn the administrator's decision if it "makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." Exbom v. Cent. States Se. & Sw. Areas Health & Welfare Fund, 900 F.2d 1138, 1143 (7th Cir. 1990). In the end, for a claimant to prevail the denial of benefits must be unreasonable, not merely incorrect. Hupp v. Experian, 108 F. Supp. 2d 1008, 1015 (N.D. Ill. 2000).

## B. DENIAL OF BENEFITS

Humana's primary contention in support of summary judgment is that its decision to distribute the Plan's benefits to Kunta's children was reasonable because the Plan's facility-of-payment provision gave Humana the express right to pay the policy proceeds to any number of Kunta's relatives in the event the named beneficiary was not alive at the time of Kunta's death. Citing this provision, Humana paid the policy proceeds to Kunta's children upon realizing that the Plan's beneficiary was deceased and after receiving permission from both Kelly, the administrator of Kunta's estate, and the Superior Court for North Carolina. In response,

5

Jackman does not take issue with the Plan's facility-of-payment provision, but instead argues that because Humana knew that Kelly executed an assignment of benefits to Jackman, it was unreasonable for Humana to disregard the assignment of benefits and to distribute the proceeds to Kunta's children.

The problem with Jackman's argument is that it fails to establish that Kelly had the proper authority to execute an assignment of benefits to Jackman in the first place. Jackman has essentially argued, in conclusory fashion, that because Kelly *eventually* would become the executor of Kunta's estate, then she necessarily had the authority to execute an assignment of benefits upon Kunta's death. But neither the facts nor the caselaw support this position. It is undisputed that at the time Kelly executed the assignment, she had not yet been appointed the executor of Kunta's estate. In this way, Kelly did not have any vested or existing rights to Kunta's policy proceeds, and thus at the time of Kunta's death, up until she was named the executor of Kunta's estate, Kelly had nothing to assign to Jackman. If Kelly had no rights to the policy proceeds, then Jackman received no rights through the assignment. See Neff v. Capital Acquisitions & Mgmt. Co., 352 F.3d 1118, 1121 (7th Cir. 2003); Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 864 (7th Cir. 1997) ("[E]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor."); Forcier v. Metro. Life. Ins. Co., 469 F.3d 178, 184 (1st Cir. 2006) ("In all events it is transparently clear that [facility of payment] clauses are not intended to give to any prospective beneficiary or other person a right to sue for the proceeds of the policy.").

Jackman cannot circumvent this realization, but attempts to do so nevertheless by shifting the blame to Humana and contending that Humana should have "voiced an objection" to the

6

assignment before Jackman made payments to the funeral home. Pl.'s Resp. at 5. Yet, again, this argument is entirely unsupported. Humana, as the administrator of the Plan, had no duty to assist Jackman in ensuring that the assignments the company obtained were valid and enforceable. Again, the assignment in this case was invalid, and thus it makes no difference whether Humana informed Jackman of the possibility that it would not realize any part of its advancement to the funeral home. Accordingly, the Court finds that Humana's decision to distribute the policy proceeds to Kunta's children, under the circumstances, was based on a reasonable assessment of the underlying policy and the facts before it, and therefore the decision was not arbitrary and capricious.

## III. CONCLUSION

For the reasons stated above, Defendant Humana Insurance Company's motion for summary judgment is granted. Plaintiff Jackman Financial Corporation's cross-motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: 3/22/2010